# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JAMES K. BENEFIELD, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **versus** | ) | |
| | ) | **2:09-cv-232-WHA** |
| **INTERNATIONAL PAPER COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| **THOMAS L. BRANTLEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **versus** | ) | |
| | ) | **2:09-cv-230-WHA** |
| **INTERNATIONAL PAPER COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

# MEMORANDUM IN OPPOSITION TO
# MOTION TO DISMISS

TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. 2

TABLE OF AUTHORITIES ........................................................................................... 4

INTRODUCTION .......................................................................................................... 9

    A.   SINGLE MEMORANDUM ....................................................................... 9

    B.   THE FACTS AS PLED IN THE COMPLAINTS ..................................... 9

    C.   WHAT IP DID NOT DISCLOSE TO THE COURT ...................................... 13

ARGUMENT .................................................................................................................. 13

    A.   THE LEGAL STANDARD ....................................................................... 13

    B.   THE TRESPASS CLAIM ......................................................................... 16

    C.   PUBLIC NUISANCE................................................................................ 19

            1. Standing.................................................................................... 19

            2. Injury ....................................................................................... 22

    D.   PRIVATE NUISANCE.............................................................................. 22

    E.   NEGLIGENCE AND WANTONNESS..................................................... 25

    F.   NEGLIGENCE PER SE ............................................................................ 27

            1. Protected Class ......................................................................... 28

            2. Violation.................................................**Error! Bookmark not defined.**

    G.   ABNORMALLY DANGEROUS ACTIVITY ......................................... 35

    H.   FRAUDULENT SUPPRESSION.............................................................. 37

**Memorandum in Opposition to Motion to Dismiss**       **Page 2**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
In the United States District Court for the Middle District of Alabama

1. Affirmative Duty of Disclosure ........................................................................ 37

2. Heightened Standard ................................................................................. 41

3. Fraudulent Suppression .............................................................................. 43

REQUEST FOR ORAL ARGUMENT ...................................................................... 43

CONCLUSION ...................................................................................................... 44

**Memorandum in Opposition to Motion to Dismiss** **Page 3**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*AmSouth Bank, N.A. v. City of Mobile*,
   500 So.2d 1072 (Ala. 1952) .............................................................. 15, 18

*Ashcroft v. Iqbal*,
   ___ U.S. ___; 129 S.Ct. 1937, 1949; 173 L.Ed. 2d 868 .................................... 14, 16

*Bank of New Orleans v. Monco Agency, Inc.*,
   823 F.2d 888, 891 (5th Cir. 1987) .......................................................... 14

*Bell Atlantic Corportion v. Twombly*,
   550 U.S. 544, 555; 127 S. Ct. 1955; 167 L.Ed.2d 929 ................................... 14, 16

Borland v. Sanders Lead Co.,
   369 So.2d 523, 529-30 (Ala. 1979) ...................................................... 15, 16

*Carter v. Chrysler Corporation*,
   743 So.2d 456 (Ala.Civ.App. 1998) ...................................................... 39

*Clark v. Container Corporation of America*,
   936 F.2d 1220 (11th Cir. 1991) .......................................................... 15, 36

*Conley v. Gibson*,
   355 U.S. 41 (1957) ....................................................................... 15

*Cook's Pest Control, Inc. v. Rebar*,
   2009 Ala. LEXIS 47 (Ala. 2009) ......................................................... 15, 34

*Covington v. Jefferson County*,
   358 F.3d 626, 639 (9th Cir. 2004) ...................................................... 29, 30, 32

*Dickinson v. Land Developers Construction Company*,
   882 So.2d 291 (Ala. 2003) ............................................................... 15, 28

**Memorandum in Opposition to Motion to Dismiss**                                **Page 4**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

*Duncan v. City of Tuscaloosa*,
   60 So.2d 438 (Ala. 1952) ........................................................................................ 14

*E.S. Robbins Corp. v. Eastman Chemical Co.*,
   912 F.Supp. 1476 (N.D.Ala. 1995) ................................................................... 15, 36

*Ellis v. Alabama Power Company*,
   431 So.2d 1242 (Ala. 1983) ................................................................................ 15,24

*Ex Parte Ford Motor Credit Company*,
   717 So.2d 781 (Ala. 1997) ...................................................................................... 39

*Ex Parte Household Retail Services*,
   744 So.2d 871 (Ala. 1999) ...................................................................................... 15

*Ex parte Meeks*,
   682 So.2d 423, 428 (Ala. 1996) .............................................................................. 24

*Families Concerned About Nerve Gas Incineration v. U.S. Department of the Army*,
   380 F.Supp.2d 1233, 1237 (N.D.Ala. 2005) ........................................................... 32

*Fike v. Peace*,
   964 So.2d 651 (Ala. 2007) ......................................................................... 15, 36, 37

*Harden v. Harden*,
   29 Ala. App. 411, 415, 197 So. 94, 97 (Ala.Civ.App. 1940) .................................... 33

*Harper v. Regency Development Company, Inc.*,
   399 So.2d 248 (Ala. 1981) ...................................................................................... 36

*In re Burbank Environmental Litigation*,
   42 F.Supp.2d 976 (C.D.Cal. 1998) .................................................................. 115, 36

*In re Genicom Corporation*,
   EPCRA-III-057 (ALJ, July 16, 1992) ...................................................................... 38

*In Re: Genicom Corporation*,
   EPCRA No. 92-2 (EAB December 15, 1992) .......................................................... 38

*In re Mobil Oil Corporation*,
   EPCRA Appeal No. 94-2 (EAB, September 29, 1994) ............................................ 38

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 5**
***Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA**
***Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

*Johnny Spradlin Auto Parts, Inc. v. Cochran*,
  568 So. 2d 738 (Ala. 1990) .......................................................................... 39, 40

*Lacey v. Morris*,
  110 So. 379 (Ala. 1926) .................................................................................. 15, 17

*Mulcahey v. Columbia Organic Chemicals Company, Incorporated*,
  29 F.3d 148, 150 (4th Cir. 1994) .................................................................. 32, 33

*National Southern Products Corp., Inc. v. City of Tuscaloosa*,
  20 So.2d 329 (Ala. 1944).................................................................................. 14

*Papasan v. Allain*,
  478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)) ................................ 14

*Park Center Incorporated v. Champion International Corp.*,
  804 F.Supp. 294, 302 (S.D.Ala. 1992)............................................................. 24

*Parker Building Services Company v. Lightsey*,
  925 So.2d 927 (Ala. 2005) ............................................................. 15, 27, 28, 32

*Parker v. Scrap Metal Processors, Inc.*,
  386 F.3d 993 (11th Cir. 2004) .......................................... 28, 29, 30, 32

*Peters v. Amoco Oil Co.*,
  57 F.Supp. 1268 (M.D.Ala. 1999) ................................................................ 41, 42

*Prill v. Marrone*,
  2009 Ala. LEXIS 46 (Ala. 2009) ...................................................................... 15, 25

*Ridgeway v. CSX Transportation, Inc.*,
  723 So.2d 600 (Ala. 1998) .............................................................................. 15, 26

*Rivell v. Private*,
  520 F.3d 1308, 1309-10 (11th Cir. 2008) ................................................................ 16

*Rushing v. Hooper-McDonald, Inc.*,
  293 Ala. 56, 300 So.2d 94 (1974) .......................................................................... 17

*Russell Corporation v. Sullivan*,
  790 So.2d 940 (Ala. 2001) .............................................................................. 19, 20

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 6**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

*Rylands v. Fletcher*,
    L.R. 3 H.L. 330 (1868) ........................................................................................... 35

*Schwartzman, Inc. v. General Electric Company*,
    848 F.Supp. 942 (D.N.M. 1993) ............................................................................ 36

*Scruggs v. Beason*,
    246 Ala. 405, 20 So.2d 774 (Ala. 1945) ........................................................... 21, 22

*Steel Company v. Citizens for a Better Environment*,
    523 U.S. 83, 86 (1998) ...................................................................................... 39, 40

*Stone Container Corporation v. Stapler*,
    83 So.2d 283 (Ala. 1955) ................................................................................... 14, 21

*Strickland v. Lambert*,
    109 So.2d 664 (Ala. 1959) ..................................................................... 14, 20, 21, 22

*Thomas Learning Center, Inc. v. McGuirk*,
    766 So.2d 161 (Ala.Civ.App. 1998) .................................................................. 15, 32

*Turner v. Westhampton Court, L.L.C.*,
    903 So.2d 82 (Ala. 2004) .................................................................................. 15, 36

*United Technologies v. Mazer*,
    556 F.3d 1260, 1269-70 (11th Cir. 2009) ........................................................... 16

## Statutes

ALA. CODE § 6-5-121 ..................................................................................................... 23

ALA. CODE § 22-30-2 ..................................................................................................... 32

ALA. CODE § 32-8-86 ..................................................................................................... 40

42 U.S.C. § 6972(a)................................................................................................... 31, 32

42 U.S.C. § 9659(a).......................................................................................................... 31

42 U.S.C. § 11046(a)(1).................................................................................................... 31

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 7**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

## Regulations

ALABAMA HAZARDOUS WASTE MANAGEMENT AND MINIMIZATION ACT, ALA. CODE §§ 22-30-1, et seq. ...................................................................................................................... 30

CLEAN  WATER ACT, 33 U.S.C. §§ 1251, et seq. ("CWA") ....................................................... 29

COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT OF 1980, 42 U.S.C. §§ 9601 ............................................................................................................ 30, 31, 38

THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 1101, et seq. (1986) .................................................................................................. 30, 31,37,39, 40, 41

RESOURCE CONSERVATION AND RECOVERY ACT, 42 U.S.C. §§ 6901, et seq. ("RCRA") ................ ......................................................................................................................... 28, 30,31

## Other Authorities

Norman J. Singer, SUTHERLAND STATUTORY CONSTRUCTION § 45.11, p. 61 (5th ed. 1993) ...... 24

## Rules

Fed.R.Civ.P. 8(a) ................................................................................................................. 13

FED.R.CIV.P. 8(d)(3) ............................................................................................................ 25

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 8**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

COME NOW the Plaintiffs, by and through the undersigned counsel, and respond to the motions to dismiss and supporting memoranda filed in these cases on May 15, 2009, stating as follows:

# I.    INTRODUCTION

## A.    Single Memorandum

This memorandum responds to virtually identical motions and memoranda filed in the two captioned cases.[1]  For the convenience of the Court and opposing counsel, the Plaintiffs have responded to both motions and their supporting memoranda in this single memorandum, which is filed in both cases.

## B.    The Facts as Pled in the Complaints

These actions concern a gross injustice committed in the name of filthy lucre – for the sake of profit, defendant International Paper Company (hereinafter "Defendant" or "IP")[2] spewed of tons of hazardous substances into the peaceful community of Prattville, Alabama, in violation of state and federal laws, and with those hazardous substances also continuously filled that same community with

---

1.    In the *Benefield* class action, this memorandum responds to the *Motion to Dismiss Plaintiffs' Complaint* (Document No. 36, hereinafter the "*Benefield Motion*") filed on May 15, 2009 and the *Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint* (Document No. 37, hereinafter the "*Benefield Memorandum*") filed on the same date.  In the *Brantley* case, this memorandum responds to the *Motion to Dismiss Plaintiffs' Complaint* (Document No. 33, hereinafter the "*Brantley Motion*") filed on May 15, 2009 and the *Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint* (Document No. 34, hereinafter the "*Brantley Memorandum*") filed on the same date.

2.    International Paper Company is by virtue of a 1999 merger the successor in interest to Union Camp Corporation.   Union Camp operated the Prattville facility prior to that merger.   International Paper Company is also the "alter ego" of Union Camp Corporation (*Benefield Complaint*, ¶ 12; *Brantley Complaint*, ¶ 1).

**Memorandum in Opposition to Motion to Dismiss**                                                **Page 9**
***Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA**
***Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

noxious odors.   This action was taken over a substantial period of time and with a callous disregard for the well-being of the residents of Prattville.

The hazardous substances were (and still are) the by-product of the Defendant's operation of a paper mill located in the heart of Prattville, Alabama.   *Benefield Complaint*, ¶ 1; *Brantley Complaint*, ¶ 1.   Although the Defendant points to the failure to identify specific dates as "evidence" that the complaints are not well pled, it is important to note at the outset that ***this action does not concern a single, discrete action taken on a single, discrete date***, for the Defendant discharged tons of hazardous substances into the environment in the Prattville Community over many, many years.   *Benefield Complaint*, ¶¶ 1, 19, 26; *Brantley Complaint*, ¶¶ 1, 19, 26.   And despite the Defendant's protestations to the contrary, the specific hazardous substances that the Defendant discharged into the Prattville Community are identified in the complaints and include dioxins, furans, and polycyclic aromatic hydrocarbons.   *Benefield Complaint*, ¶¶ 2 and 3; *Brantley Complaint*, ¶¶ 2 and 3.   The complaints also describe the dangerous and unhealthy nature of these substances.   *Benefield Complaint*, ¶¶ 4 through 8; *Brantley Complaint*, ¶¶ 4 through 8.   These substances have long been known – in the industrial, medical, and scientific communities – to cause significant adverse health effects in humans and animals, including cancer, birth defects, and other life- threatening diseases.   *Benefield Complaint*, ¶¶ 7, 8, and 33; *Brantley Complaint*, ¶¶ 7, 8, and 33.   Moreover, these hazardous substances are accompanied by, and evidenced by, particulate matter and noxious odors, which are the physical manifestation of the hazardous substances.   *Benefield Complaint*, ¶ 9; *Brantley Complaint*, ¶ 9).   The Defendant's lax

**Memorandum in Opposition to Motion to Dismiss**                                                           **Page 10**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

environmental controls earned its paper mill the distinction of being rated as among the "dirtiest facilities in the U.S." *Benefield Complaint*, ¶ 10; *Brantley Complaint*, ¶ 10.

The complaints also specifically explain how the Plaintiffs and their properties have been exposed to the hazardous substances. First, they:

> … have resided and/or worked in the community that surrounds the Facility and/or have owned property located in that community. In addition, Plaintiffs are all persons who have losses occasioned by International Paper's actions, including, without limitation, personal injuries, medical problems, fear of future medical problems, and property damage, all of which were proximately caused by the release of the Hazardous Substances, Particulate Matter, and Noxious Odors into the environment from the Facility.

*Benefield Complaint*, ¶ 14; *Brantley Complaint*, ¶ 14. For purposes of the class action, the Plaintiffs are divided into the following three classes:

> A. Proposed Class A consists of all persons who own Property located within two (2) miles of the Facility and whose Property was therefore contaminated and damaged by the Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility.
>
> B. Proposed Class B consists of all persons who have resided within two (2) miles of the Facility, who were therefore exposed to the Hazardous Substances released into the environment from the Facility, and who have been diagnosed with serious, disabling, and life-threatening diseases and health conditions known to be caused by exposure to the Hazardous Substances.
>
> C. Proposed Class C consists of all persons who have resided within five (5) miles of the Facility, who were therefore exposed to the Hazardous Substances, Particulate Matter, and Noxious Odors released into the environment from the Facility, and who have therefore experienced the smell of the Noxious Odors which have caused harm to the Plaintiffs.

*Benefield Complaint*, ¶ 20.

The complaints also clearly allege that the releases of the hazardous substances, particulate matter, and noxious odors occurred not only with the Defendant's knowledge or imputed

**Memorandum in Opposition to Motion to Dismiss**                                          **Page 11**
***Benefield, et al., v. International Paper Co.***, Civil Action No. 2:09-cv-232-WHA
***Brantley, et al., v. International Paper Co.***, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

knowledge, but that the Defendant intentionally failed to disclose this information to the Plaintiffs. *Benefield Complaint*, ¶¶ 19, 29-34, 37; *Brantley Complaint*, ¶¶ 19, 29-30, 32.   Indeed, the releases of the hazardous substances violated several state and federal environmental statutes, which the complaints list and describe.   *Benefield Complaint*, ¶¶ 27-28; *Brantley Complaint*, ¶¶ 22-23. Then, the complaints continue with a description of the damages suffered by the Plaintiffs, including both personal injuries and property damage.   *Benefield Complaint*, ¶ 19; *Brantley Complaint*, ¶ 19.   The personal injuries include serious, disabling, and life-threatening diseases and health conditions and have been accompanied by emotional injuries, pain and suffering, loss of wages, medical expenses, future medical expenses, and loss of enjoyment of life.   *Benefield Complaint*, ¶ 38; *Brantley Complaint*, ¶ 33.   With respect to property damage, the complaints explain that the damage falls into three components: diminution of value; loss of expected use and enjoyment of the property; and the anticipated cost of cleaning their property.   *Benefield Complaint*, ¶ 19; *Brantley Complaint*, ¶ 19.

In short, as a result of their actions, the Defendant has transmogrified the Prattville Community into a cesspool of industrial waste.   Indeed, even today the Defendant's paper mill continues to emit hazardous substances in amounts prohibited by law and in amounts that the Defendant's officers, directors, shareholders, and attorneys would never tolerate in their own communities, for the emissions have caused, and continue to this very day to cause, noxious odors twenty-four hours a day, seven days a week.   The Defendant's greed, wantonness, and negligence have visited upon this peaceful community an overwhelming plague of disease, property damage, and suffering.

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 12**
*Benefield, et al., v. International Paper Co.*, **Civil Action No. 2:09-cv-232-WHA**
*Brantley, et al., v. International Paper Co.*, **Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

The Plaintiffs, all residents of the Prattville Community, filed this lawsuit seeking a measure of justice, including compensation for their losses and justly deserved punishment for IP.

### C.    What IP Did Not Disclose to the Court

The Defendant baldly asserts that the complaints are filled with "conclusory allegations" that do not fairly put the Defendant on notice of the claims that have been asserted, and that the complaints lack factual support for "even the most fundamental questions in this type of tort suit." _Benefield Memorandum_, p. 6; _Brantley Memorandum_, p. 6.  Aside from the fact that this assessment of the complaints is incorrect, it is also somewhat deceptive.   This is so because the Defendant cites various authorities stating that a complaint must put a defendant on notice of the claims asserted – as though that has not occurred – but fails to advise the Court that prior to the filing of these complaints, the Plaintiffs' counsel furnished the Defendant with scientific evidence in the form of a preliminary expert report.   That expert report lays out in exhaustive detail the nature of the toxic releases that are made the subject of these two lawsuits.

## II.    ARGUMENT

### A.    The Legal Standard

The standard for pleading is set forth in _Fed.R.Civ.P._ 8(a), which identifies three requirements that a complaint must contain:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

**Memorandum in Opposition to Motion to Dismiss**                                        **Page 13**
**_Benefield, et al., v. International Paper Co._, Civil Action No. 2:09-cv-232-WHA**
**_Brantley, et al., v. International Paper Co._, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

A simple review of the complaints in these actions clearly demonstrates that they satisfy these three requirements, for they give a short and plain statement of the claims.  Indeed, "the Federal Rules of Civil Procedure are based on the concept of 'notice pleadings'" and "[t]echnicalities and pleading niceties give way to substance."  *Bank of New Orleans v. Monco Agency, Inc.*, 823 F.2d 888, 891 (5th Cir. 1987).   Thus, as the United States Supreme Court noted just last month, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era…."  *Ashcroft v. Iqbal*, ___ U.S. ___; 129 S.Ct. 1937, 1950; 173 L.Ed. 2d 868.   And contrary to the Defendant's position, Rule 8 "does not require 'detailed factual allegations.'"  *Ashcroft v. Iqbal*, ___ U.S. ___; 129 S.Ct. 1937, 1949; 173 L.Ed. 2d 868, quoting from *Bell Atlantic Corportion v. Twombly*, 550 U.S. 544, 555; 127 S. Ct. 1955; 167 L.Ed.2d 929, citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

While paying lip service to much of this law, the Defendant urges this Court to return to the bygone era of pleading technicalities, as evidenced by the fact that ***four of the thirty opinions cited by the Defendant were decided on demurrers*** long before Alabama fashioned rules similar to the FEDERAL RULES OF CIVIL PROCEDURE.[3]   Indeed, in all four cases the demurrers were overruled, even though the pleading standard at that time was significantly more technical.  Even more stunning, however, is the Defendant's confusion of pleading and evidentiary standards, for of the remaining twenty-six opinions in its brief, no fewer than eight concern motions for ***summary***

---

3.        *Duncan v. City of Tuscaloosa*, 60 So.2d 438 (Ala. 1952); *National Southern Products Corp., Inc. v. City of Tuscaloosa*, 20 So.2d 329 (Ala. 1944); *Stone Container Corp. v. Stapler*, 83So.2d 283 (Ala. 1955); and *Strickland v. Lambert*, 109 So.2d 664 (Ala. 1959).

**Memorandum in Opposition to Motion to Dismiss**                                          **Page 14**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

***judgment***,[4] five involve appeals from ***jury verdicts***,[5] two involve appeals from ***other trial judgments***,[6] and two concern other matters altogether.[7]   And of the opinions actually dealing with pleading standards, they appear primarily in the section of the Defendant's brief generally describing the standard for pleading.  ***Thus, in asking this Court to dismiss the Plaintiffs' claims, the Defendant has offered very little authority relevant to the standard of pleading***.

The Court's inquiry on these motions to dismiss is simply whether the complaints contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face:"

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*citation omitted*].  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*citation omitted*].  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [*citation omitted*].  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of `entitlement to relief."

---

4.        *AmSouth Bank, N.A. v. City of Mobile*, 500 So.2d 1072 (Ala. 1952); *Dickinson v. Land Developers Construction Company*, 882 So.2d 291 (Ala. 2003); *E.S. Robbins Corporation v. Eastman Chemicals Co*., 912 F.Supp. 1476 (N.D.Ala. 1995); *Ellis v. Alabama Power Company*, 431 So.2d 1242 (Ala. 1983); *Fike v. Peace*, 964 So.2d 651 (Ala. 2007)(on certified question); *In re Burbank Environmental Litigation*, 42 F.Supp.2d 976 (C.D.Cal. 1998)("summary adjudication"); *Prill v. Marrone*, 2009 Ala. LEXIS 46 (Ala. 2009); *Ridgeway v. CSX Transportation, Inc.*, 723 So.2d 600 (Ala. 1998); and *Turner v. Westhampton Court, L.L.C.*, 903 So.2d 82 (Ala. 2004).

5.        *Clark v. Container Corporation of America*, 936 F.2d 1220 (11th Cir. 1991); *Cook's Pest Control, Inc. v. Rebar*, 925 So.2d 927 (Ala. 2005); *Parker Building Services Company v. Lightsey*, 925 So.2d 927 (Ala. 2005); *Russell Corporation v. Sullivan*, 790 So.2d 940 (Ala. 2001); and *Thomas Learning Center, Inc. v. McGuirk*, 766 So.2d 161 (Ala.Civ.App. 1998).

6.        *Borland v. Sanders Lead Company*, 369 So.2d 523 (Ala. 1979)(trial ore tenus); *Lacey v. Morris*, 110 So.2d 379 (Ala. 1926)(_____).

7.        *Conley v. Gibson*, 355 U.S. 41 (1957)(dismissal for lack of jurisdiction, not for failure to state a claim); and *Ex Parte Household Retail Services*, 744 So.2d 871 (Ala. 1999)(mandamus to reverse class certification).

**Memorandum in Opposition to Motion to Dismiss**                                                    **Page 15**
***Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA**
***Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

*Ashcroft v. Iqbal*, ___ U.S. ___; 129 S.Ct. 1937, 1949; 173 L.Ed. 2d 868 (2009), *quoting in part*

*Bell Atlantic Corportion v. Twombly*, 550 U.S. 544, 555; 127 S. Ct. 1955; 167 L.Ed.2d 929 (____).

Thus, a complaint is sufficient if it alleges enough facts merely to suggest that the required element

is plausible.  *Rivell v. Private*, 520 F.3d 1308, 1309-10 (11th Cir. 2008).

For this reason, all well-pleaded factual allegations are accepted as true and are viewed in

the light most favorable to the plaintiff.  *United Technologies v. Mazer*, 556 F.3d 1260, 1269-70

(11th Cir. 2009).

## B.    The Trespass Claim

The Defendant contends that the Plaintiffs' trespass claims fail in two ways: (1) failing to

contain an affirmative representation that the Plaintiffs have exclusive possession of the land and

(2) failing to adequately allege substantial damages.   In making these arguments, the Defendant

relies upon three cases, ***not one of which involved the sufficiency of pleadings***.   Perhaps more

significant, however, is that the Defendant ignores not only the different procedural postures and

legal standards in these cases, but also certain key facts upon which the decisions were based.

The Defendant quotes *dicta* in *Borland v. Sanders Lead Co., Inc.*, 369 So.2d 523 (Ala.

1979), an opinion which is ***actually favorable to the Plaintiffs in this case***, for the Alabama

Supreme Court reversed a defense judgment in a case tried ore tenus to the trial judge without a

jury.   First, the *dicta* to which the Defendant directed the Court's attention:

> … there is a point where the entry is so lacking in substance that the law will refuse to recognize it,
> applying the maxim *de minimis non curat lex* – the law does not concern itself with trifles.

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 16**
***Benefield, et al., v. International Paper Co.***, Civil Action No. 2:09-cv-232-WHA
***Brantley, et al., v. International Paper Co.***, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

369 So.2d at 529. *Benefield Memorandum*, p. 6; *Brantley Memorandum*, p. 5. Immediately following this *dicta*, the Alabama Supreme Court made the following observation:

> In the present case, however, we are not faced with a trifling complaint. The Plaintiffs in this case have suffered, *if the evidence is believed*, a real and substantial invasion of a protected interest

*Id.*, *emphasis added*. Thus, whether the trespass is substantial or *de minimus* is determined by reference to the evidence, not the detail of the factual allegations included with the complaint. Significantly, the *Borland* case is factually similar to the instant action, for the property owner complained of a trespass based upon pollution being emitted by an adjacent landowner. And at the outset of the case, the Alabama Supreme Court noted:

> Alabama law clearly provides an appropriate remedy for Plaintiffs who have been directly injured by the deleterious effects of pollutants created by another party's acts.
>
> In *Rushing v. Hooper-McDonald, Inc.*, 293 Ala. 56, 300 So.2d 94 (1974), this Court held, in a case of first impression, that a trespass need not be inflicted directly on another's realty, but may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty. *Rushing* specifically held that a trespass is committed by one who knowingly discharges asphalt in such a manner that it will in due course invade a neighbor's realty and cause harm.

369 So.2d at 526-527 (*citation emphasis added*).

In *Lacey v. Morris*, 110 So. 379 (Ala. 1926), the second opinion cited by the Defendant in connection with the trespass claims, the Alabama Supreme Court reversed a judgment entered after trial and remanded the case because the trial court failed to permit the landlord to introduce evidence that he retained some possessory rights. Thus, in offering this authority to the Court, the Defendant overlooks two very important points. First, the Alabama Supreme Court specifically

**Memorandum in Opposition to Motion to Dismiss**                    **Page 17**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

recognized that a landlord may retain the right to re-enter, and therefore may have some possessory rights.   Second, and more significant, this is an ***evidentiary*** issue, not a pleading issue.

Finally, in *AmSouth Bank, N.A. v. City of Mobile*, 500 So.2d 1072 (Ala. 1986), the Alabama Supreme Court affirmed a ***summary judgment*** on a trespass claim where the facts were ***undisputed***.   *Id.* at 1073.   Among the undisputed facts was the plaintiff's status as a landlord and lack of any possessory interest.

While the Defendant can correctly cite these cases for the proposition that a landlord, in many instances, may not be able to successfully prosecute a trespass action, these three opinions do not state – or even imply – that a complaint must include an affirmative representation that the plaintiff is not a landlord.

A review of the Plaintiffs' complaints clearly demonstrates that they have properly pled their trespass claims.   Count I asserts a cause of action by the Plaintiffs for trespass to land, personal property, and fixtures, and it incorporates earlier factual allegations supporting the cause of action.   *Benefield Complaint*, ¶¶ 1-42, 44; *Brantley Complaint*, ¶¶ 1-37, 39.   The complaints also allege that the Defendant released hazardous substances from its paper mill into the environment, that those substances were deposited onto and contaminated the Plaintiffs' property, and that the Defendant did so with actual knowledge that the substances would be deposited onto and would contaminate the Plaintiffs' Property.   *Benefield Complaint*, ¶¶ 36-37; *Brantley Complaint*, ¶¶ 31-32.   They further allege that the Defendant dumped waste, debris, and ash directly on the Plaintiffs' Property.   *Benefield Complaint*, ¶ 39; *Brantley Complaint*, ¶ 34.

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 18**
***Benefield, et al., v. International Paper Co.***, Civil Action No. 2:09-cv-232-WHA
***Brantley, et al., v. International Paper Co.***, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

Count I further alleges that the release from the Facility of the Hazardous Substances, Particulate Matter, and Noxious Odors resulted in the contamination of Plaintiffs' Property and constituted a continuous trespass onto Plaintiffs' Property; that the entry was unauthorized and without Plaintiffs' consent; and that the trespass caused a decrease in the value of the Plaintiffs' Property, deprivation of the reasonable use and value of the Property, and other damages. *Benefield Complaint*, ¶¶ 45-48; *Brantley Complaint*, ¶¶ 40-43.   The Plaintiffs seek damages and injunctive relief as a remedy.   *Benefield Complaint*, ¶¶ 49, 50; *Brantley Complaint*, ¶¶ 44, 45.

### C.    Public Nuisance

#### 1.    Standing

The Defendant contends that the Plaintiffs have no standing to bring a claim for public nuisance because they have not ***proven*** that they suffered special damages.   In support of this contention, the Defendant makes two mistakes.   First, the Defendant once again confuses pleading requirements tested by motions to dismiss with evidentiary requirements tested by motions for summary judgment.   Second, the Defendant simply assumes that the special damages required to prosecute a public nuisance cannot be suffered by an entire community.

The Defendant cites *Russell Corporation v. Sullivan*, 790 So.2d 940 (Ala. 2001) for the proposition that an individual can only bring an action for public nuisance if the individual has suffered "special damages" that are different in "kind and degree" from the damages suffered by the public in general.   But the Defendant makes no effort to compare the result in *Russell Corporation* to this case, instead simply assuming that it is applicable to a motion to dismiss and that it is factually

**Memorandum in Opposition to Motion to Dismiss**                                      **Page 19**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
In the United States District Court for the Middle District of Alabama

akin to the instant case.  In contrast to the motion now before this Court, the opinion in _Russell Corporation_ was based not on the pleadings, but rather on the failure of evidence – the Alabama Supreme Court reversed the denial of a motion for judgment as a matter of law because it specifically found that the plaintiffs had not presented **_any_** evidence that they suffered special damages:

> Russell and Avondale argue that the plaintiffs **_never proved_** that the alleged nuisance **_prevented them from using or enjoying_** their "own" property.   While the plaintiffs offered evidence that they were unable to use and enjoy the lake, the use and enjoyment of a public area is a public right.

790 So.2d at 952, _emphasis added_.  The Plaintiffs in these cases have alleged just that – that they have lost the use and enjoyment of their property.   _Benefield Complaint_, ¶¶ 1-42, 48, 65-66; _Brantley Complaint_, ¶¶ 1-37, 43, 60-61.

Indeed, the Alabama Supreme Court has said that the loss of the use and enjoyment of property is a sufficient special damage, even if other property owners sustain similar injuries. The Court made this observation in _Strickland v. Lambert_, 268 Ala. 580, 109 So.2d 664 (Ala. 1959), one of the very cases cited by the Defendant:

> In the instant case, according to the bill of complaint, the odors and flies emanating from respondents' poultry plant move onto complainant's land and into his home, thereby disturbing his comfort and endangering his health.  The injury to complainant's comfort and the threat to his health in his home is an injury to his right to use and enjoy his property free from the odors and flies, and is an injury in which no one else participates, although other neighbors may suffer a like injury to enjoyment of their separate homes.

268 Ala. 584.

Indeed, as a result of these special damages, the Alabama Supreme Court concluded in _Strickland_ that the Circuit Court had properly denied the demurrer and that the bill properly alleged a cause of action not only for public nuisance, but also for private nuisance:

**Memorandum in Opposition to Motion to Dismiss**                              **Page 20**
_**Benefield, et al., v. International Paper Co.**_, Civil Action No. 2:09-cv-232-WHA
_**Brantley, et al., v. International Paper Co.**_, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

> We think the allegations of the instant bill establish a private nuisance or a public one from which complainant suffers a special injury different in kind from that suffered by the public generally.

268 Ala. 582.

The Court came to the same conclusion in _Stone Container Corporation v. Stapler_, 83 So.2d 283 (Ala. 1955), another case cited by the Defendant.  Because some of the waste discharged by the defendant in that case into a public creek eventually found its way onto the plaintiffs' property, the Court found that the plaintiffs had suffered special damages sufficient to bring an action for public nuisance.

Without any support, the Defendant simply assumes that a significant percentage of a community cannot suffer "special damages,"[8] an assumption that is repudiated by _Scruggs v. Beason_, 246 Ala. 405, 20 So.2d 774 (Ala. 1945).   In _Scruggs_, members of a community brought an action to prevent the blocking of a public road that led to an ancient cemetery, and the Alabama Supreme Court noted that special damages sufficient to support an action for public nuisance may be shared by members of an entire community:

> It is clear, however, that appellees have such interest in the alleged public road which leads from the Federal highway to the cemetery as to give them the right to injunctive relief.  __Complainants are members of the community__ and have members of their families buried in a cemetery used for burial purposes by the community.  __Complainants, with other members of the community__, care for the upkeep of the cemetery.   The public road offers the only means of entry to and from the graveyard.  A cemetery is a place not only for the burial of the dead, but for an expression of love and respect by the living for the dead.   Hence there must be accorded to complainants not only the right of burial

---

8.      The Defendant cites _Strickland_ and _Stone Container_ for the proposition that "where an individual has alleged the necessary special damage to pursue a public nuisance claim, the complaint has been brought on behalf of a small number of individuals and provided specific facts describing plaintiffs' unique injuries and their distance from the alleged polluter."  _Benefield Memorandum_, footnote 2, page 7; _Brantley Memorandum_, footnote 2, page 7.   But the Plaintiffs' counsel has been unable to find any conclusion in these two opinions that special damages are limited to small groups of people.

**Memorandum in Opposition to Motion to Dismiss**                                                                  **Page 21**
**_Benefield, et al., v. International Paper Co._, Civil Action No. 2:09-cv-232-WHA**
**_Brantley, et al., v. International Paper Co._, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

but also the right to visit, maintain and beautify the graves of relatives interred therein, without obstruction in the public road.

246 Ala. at 408, *emphasis added*.

Thus, entire communities may bring an action for public nuisance because such a nuisance can cause many people to suffer special damages, as it has in this case.

## 2.    Injury

The Defendant also asserts that the Plaintiffs' public nuisance claims are "fanciful" because the complaints provide "no factual allegations describing how even one of them incurred an inconvenience that would affect and 'ordinary reasonable man.'"  In fact, the complaints clearly state that the Plaintiffs have suffered personal injuries, property damage, and the loss of use and enjoyment of their properties.   Each of these is sufficient to establish a public nuisance claim.

> The law does not require that before a party can abate a nuisance he must show an injury which is unique to him.   Neither the fact that the public authorities held a hearing on the matter, nor the fact that other neighbors suffer a like injury in enjoyment of their respective properties, operates to destroy the special character of the damage to complainant in enjoyment of his property.
>
> It follows that the Circuit Court did not err in overruling the ground of demurrer insisted on in this appeal.

*Strickland v. Lambert*, 268 Ala. 580, 584, 109 So.2d 664 (1959).

## D.    Private Nuisance

In asserting that the complaints fail to state claims for private nuisance, the Defendant makes two principal arguments: (1) that private nuisances in Alabama are limited to nuisances that

**Memorandum in Opposition to Motion to Dismiss**                                                                    **Page 22**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

affect only one or a "few" individuals rather than any number close to the number of Plaintiffs in these cases; and (2) that the Plaintiffs have not alleged any damages.

In connection with its first assertion, the Defendant relies on a literal reading of ALA. CODE § 6-5-121, which distinguishes between public and private nuisances by stating, *inter alia*, that a private nuisance is "limited in its injurious effects to one or a few individuals."   In response, the Plaintiffs note first that BLACK'S DICTIONARY indicates that the word "few" can mean "not many; of a small number" *and also* that it is *a relative term* of "great elasticity of meaning."

Reading the statute as a whole, the Plaintiffs submit that the word "few" is used in the statute as a relative in comparison to the definition given for a public nuisance.   A public nuisance is "one which damages **_all_** persons who come within the sphere of its operation."   ALA. CODE § 6-5-121, *emphasis added*.   The word "few" as used in the statute is meant to be a term relative to "all" – where a nuisance affects any number of persons less than "all," then a "few" persons have been affected and those persons can recover for private nuisance.   Any other construction of the words "all" and "few" would lead to the absurd consequence that, if a nuisance affected one person less than "all persons who come within the sphere of its operation," there would be no cause of action for a public nuisance because not "all" were affected and no cause of action for a private nuisance because more than a small number were affected.   The law abhors such a construction:

> It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result. . . .   It is fundamental . . . that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies

**Memorandum in Opposition to Motion to Dismiss**                                          **Page 23**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
In the United States District Court for the Middle District of Alabama

of the act in question.   A construction resulting in absurd consequences as well as unreasonableness will be avoided.

*Ex parte Meeks*, 682 So.2d 423, 428 (Ala. 1996), quoting Norman J. Singer, SUTHERLAND

STATUTORY CONSTRUCTION § 45.11, p. 61 (5th ed. 1993).

Indeed, in one of the very cases cited by the Defendant, the court noted that "Section 5-120 must be liberally interpreted to effect its broadly stated purposes."   *Park Center Incorporated v. Champion International Corp.*, 804 F.Supp. 294, 302 (S.D.Ala. 1992).   In that case, the court denied judgment on the pleadings on a nuisance claim:

> Viewing the pleadings in the light most favorable to Plaintiffs, and drawing all reasonable inferences in their favor, the Court concludes that Defendant is not clearly entitled to judgment on the nuisance claims.   Considering that offensive odors can constitute a private nuisance, and interpreting section 5-120 liberally to effect its broadly stated purpose, the Court holds Plaintiffs' complaint legally sufficient under these circumstances.   It cannot be said that the lupuna wood odors affecting the building in this action under no set of factual circumstances could constitute an interference with Plaintiffs' use and enjoyment of the building.

The sole case upon which the Defendant relies[9] in its narrow interpretation of the statute is

*Ellis v. Alabama Power Co.*, 431 So.2d 1242 (Ala. 1983), another case ***decided not on the sufficiency of pleadings but rather on summary judgment***.   In *Ellis*, the trial court made a specific evidentiary finding that "[e]ssentially all of the property owners located on Mitchell Reservoir were flooded on April 13, 1979."   There has been no such finding of fact – or, indeed, any proffered evidence – that the toxic releases from the Defendant's paper mill affected ***all*** of the

---

9.    The Defendant cites two cases in footnote 4 for the proposition that a municipality may initiate a public nuisance claim.   It is interesting that both cited cases were decided before Alabama adopted rules of civil procedure based on the federal rules, and yet that both cases involved appeals of decrees ***overruling*** demurrers.

**Memorandum in Opposition to Motion to Dismiss**                                      **Page 24**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

persons[10] who enter the sphere of this activity.   It is conceivable that the Plaintiffs – being those persons who have suffered either personal injury or property damage from the releases – constitute a far smaller subset of the persons and property within the Defendant's sphere of activity.

The Defendant repeats its argument that the Plaintiffs have made "no allegation of injury," which, as explained above, is simply not true.   Indeed, the injuries alleged by the Plaintiffs would not only affect an ordinary reasonable man, they are of precisely the type found in the case law.

### E.    Negligence and Wantonness

The Defendant baldly asserts that to "properly plead claims for negligence and wantonness under Alabama law, Plaintiffs must allege, *inter alia*, that IP breached a duty and that IP's breach caused damages."   *Benefield Memorandum*, p. 10; *Brantley Memorandum*, p. 10.   ***But the two cases that the Defendant cites for this proposition have nothing to do with pleading at all***.   In *Prill v. Marrone*, 2009 Ala. LEXIS 46, 2009 WL 418073 (Ala. 2009), the Alabama Supreme Court affirmed a summary judgment where the evidence established that the decedent's death was the result of his own negligence:

> There is ***no evidence*** indicating that Justin's or Sean's conduct caused Michael to surrender his own free will.   ***All the evidence*** presented to the trial court leads to the conclusion that, with conscious volition, Michael recklessly and without warning picked up the gun, pointed it at his head, and pulled the trigger.   Ms. Prill ***failed to present substantial evidence*** indicating that Justin and/or Sean created an uncontrollable impulse in Michael that led to his suicide.   Therefore, Ms. Prill has ***failed to present substantial evidence*** creating a genuine issue of material fact in response to the properly supported summary-judgment motions, and, thus, the summary judgment in favor of Justin and Sean on her wrongful-death claim is affirmed.

---

10.    FED.R.CIV.PRO. 8(d)(3) allows a pleader to allege inconsistent claims.   Hence, it is permissible for the Plaintiffs to allege in Count II that the releases injure all persons who come within the sphere of operation and less than all in Count III.

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 25**
***Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA**
***Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

2009 Ala. LEXIS 46, at page 17, *emphasis added*.

Similarly, in <u>*Ridgeway v. CSX Transportation, Inc.*</u>, 723 So.2d 600 (Ala. 1998), the Alabama Supreme Court affirmed a summary judgment where the evidence established not only that the defendant was not negligent, but that the plaintiff was:

> The ***undisputed evidence*** indicated that CSX had complied with *§ 37-2-80* by erecting the "crossbuck" and that it had placed the crossbuck in such a prominent location beside the eastbound lane on Concordia Avenue that Ms. Ridgeway could have easily seen it as she approached the crossing.  In addition, ***it is undisputed*** that Ms. Ridgeway was familiar with the area around the crossing and that she knew, or should have known, that the track was there. [footnote omitted]. Furthermore, the ***undisputed evidence*** indicated that no special conditions existed at the crossing that could have rendered the crossing unusually dangerous *even if Ms. Ridgeway had exercised reasonable care as she crossed the track*.

723 So.2d at 609, *some emphasis added*.

But apart from the fact that the Defendant once again relies on cases involving a failure of evidence rather than a failure of pleading, there are in the complaints ample allegations establishing duty, breach, and damages.  First, the complaints allege that the toxic releases violated a variety of environmental statutes intended to protect the public.  <u>*Benefield Complaint*</u>, ¶ 27; <u>*Brantley Complaint*</u>, ¶ 22.   Second, the complaints allege that the Defendant knew or should have known that the releases would cause the life-threatening diseases and property damage. <u>*Benefield Complaint*</u>, ¶¶ 29-31, 34, 37; <u>*Brantley Complaint*</u>, ¶¶ 24-26, 29, 32.   Third, as described above, the complaints describe the personal injuries, property damage, and other damages suffered by the Plaintiffs.   With respect to property damage, the complaints expressly allege that the land has become contaminated, that the contamination is sufficient to cause a decrease in value in the land, and that the trespass has deprived the Plaintiffs of the reasonable use and value of their

**Memorandum in Opposition to Motion to Dismiss**                                      **Page 26**
***Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA**
***Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

property.  _Benefield Complaint_, ¶¶ 45-48; _Brantley Complaint_, 40-43.  With respect to personal injury, the Class Action Complaint alleges the releases.  _Benefield Complaint_, ¶ 38; _Brantley Complaint_, 33.

The Defendant's assertion that it does not have "fair notice" of the Plaintiffs' claims is laughable, particularly in light of the fact that the Plaintiffs provided the Defendant with an exhaustive expert report prior to filing these cases.

Viewing the allegations in the light most favorable to the Plaintiffs, the Defendant has received explicit notice of the Plaintiffs' claims, including duty, breach, and damages.

### F.    Negligence Per Se

The doctrine of negligence per se or negligence as a matter of law arises from the premise that the legislature may enact a statute that replaces the common-law standard of the reasonably prudent person with an absolute, required standard of care.  When the legislature adopts such a standard, anyone who violates it and causes injury to a person that the statute intended to protect is liable for negligence per se.  Proof of a violation of the statute is proof of negligence.  _Parker Building Services Company, Inc. v. Lightsey_, 925 So.2d 927, 931 (Ala. 2005).  Thus, to establish negligence per se, a plaintiff must prove only: (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was of the kind contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 27**
**_Benefield, et al., v. International Paper Co._, Civil Action No. 2:09-cv-232-WHA**
**_Brantley, et al., v. International Paper Co._, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

injury.  *Parker Building Services Company, Inc. v. Lightsey*, 925 So.2d 927, 931 (Ala. 2005); *Dickinson v. Land Developers Construction Company, Inc.*, 882 So.2d 291, 302 (Ala. 2003).

The Defendant makes a two-pronged argument to defeat the Plaintiffs' negligence per se claim.  First, the Defendant contends that the Plaintiffs may not bring an action for negligence per se unless they can demonstrate that they are part of a "protected class," and that the Plaintiffs cannot establish this.  Second, the Defendant contends that the Plaintiffs have failed to include in the complaints specific factual allegations stating precisely how the statutes were violated.

## 1.    Protected Class

The Defendant correctly states that to bring an action for negligence per se, the Plaintiffs must be part of a "protected class."   However, the Defendant then concludes – without referring to a single case interpreting the statutes at issue – that the Plaintiffs are not part of any "protected class."   This conclusion is simply not warranted.

In a case remarkably similar to the instant case, the Eleventh Circuit ruled that where evidence supports causation and resulting injury, a violation of the RESOURCE CONSERVATION AND RECOVERY ACT, 42 U.S.C. §§ 6901, et seq. ("RCRA") constitutes negligence per se.  *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993 (11th Cir. 2004).  To prevail on a claim under 42 U.S.C. § 6972(a)(1)(B), the plaintiff must prove: (1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment,

---

**Memorandum in Opposition to Motion to Dismiss**                                 **Page 28**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

transportation, or disposal of solid or hazardous waste; and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment.

In *Parker*, property owners sued a scrap metal yard and its predecessors in interest, alleging, *inter alia*, violations of RCRA and the CLEAN WATER ACT, 33 USCS §§ 1251, et seq. ("CWA"). The court quoted with approval a Ninth Circuit case in which the plaintiffs lived across the street from a landfill and alleged that the operators of the landfill violated RCRA:

> If the landfill is not run as required by RCRA, the Covingtons are directly confronted with the risks that RCRA sought to minimize: Fires, explosions, vectors, scavengers, and ground-water contamination, if such occur, threaten the Covingtons' enjoyment of life and security of home. Violations of RCRA increase the risks of such injuries to the Covingtons. Such risks from improper operation of a landfill are in no way speculative when the landfill is your next-door neighbor.

*Covington v. Jefferson County*, 358 F.3d 626, 639 (9th Cir. 2004), cited in *Parker*, 386 F.3d at 1003.

Based on the Ninth Circuit's ruling in *Covington*, the Eleventh Circuit ruled that a RCRA violation resulting in damages to a plaintiff satisfied the injury-in-fact requirement and established causation:

> Here, Mrs. Parker's factual showing that the soil on her land was contaminated, that USTs were leaking, and that solid waste migrated onto the Parker property is sufficient to satisfy the injury-in-fact requirement.
>
> The defendants also challenge causation and redressability, arguing that any injury is not the result of a violation of the RCRA. The Parkers, however, recovered pieces of solid waste from the property and submitted these at trial. Such evidence shows likely violations of the RCRA by the defendants and, thus, the evidence shows causation. Finally, an injunction preventing the defendants from allowing such waste to migrate onto the Parker property would redress the injury.

386 F.3d at 1003.

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 29**
***Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA**
***Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

Prior to filing this case the Plaintiffs' attorneys and experts collected substantial evidence in the form of EPA and ADEM records, attic dust and atmospheric samples, and documentary evidence of specific violations of RCRA, CERCLA § 103, and the ALABAMA HAZARDOUS WASTE MANAGEMENT AND MINIMIZATION ACT ("HWMMA"), ALABAMA CODE §§ 22-30-1, *et seq.* committed by the defendants. Based on this evidence, the Plaintiff's experts conducted dispersion modeling to establish the causal effect of the Defendant's emissions. As in *Parker* and *Covington*, such evidence clearly establishes the elements of negligence per se.

In addition, the Defendant had an affirmative obligation under THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, *et seq.* (1986), to warn the Plaintiffs and their decedents of the unreasonably dangerous nature of the hazardous substances that they released into the environment. Violation of this statute also provides a foundation for the Plaintiffs' negligence per se claim.

The Plaintiffs clearly alleged in their complaints that in operating its paper mill, the Defendant violated several federal and state environmental statutes, including the RESOURCE CONSERVATION AND RECOVERY ACT, 42 U.S.C. §§ 6901, *et seq.* (hereinafter "RCRA"), the COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT OF 1980, 42 U.S.C. §§ 9601, *et seq.* (hereinafter "CERCLA"), THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, *et seq.* (hereinafter "EPCRA"), and the ALABAMA HAZARDOUS WASTE MANAGEMENT AND MINIMIZATION ACT, Ala. Code §§ 22-30-1, *et seq.* (hereinafter "AHWMMA"). *Benefield Complaint*, ¶ 27; *Brantley Complaint*, ¶ 22.

**Memorandum in Opposition to Motion to Dismiss**                    **Page 30**
***Benefield, et al., v. International Paper Co.***, Civil Action No. 2:09-cv-232-WHA
***Brantley, et al., v. International Paper Co.***, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

The Defendant asserts that these statutes were enacted to protect the "general public" and therefore cannot support an action for negligence per se. The Plaintiffs do not dispute that the statutes were enacted to protect the "general public." Indeed, the Plaintiffs agree that RCRA, CERCLA, EPCRA, and HWMMA were in fact enacted to protect the public health, and ***that is precisely why the Defendant finds itself sued in this lawsuit*** – because the Defendant failed to meet its responsibilities under these laws.

But the Defendant makes an unsupported leap of logic and simply assumes that statutes intended to protect the general public cannot support a cause of action for negligence *per se*. But this assumption flatly contradicts the law. RCRA specifically authorizes "any person" to bring a civil action against anyone who violates orders, permits, or other RCRA-based requirements, or against anyone "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a). CERCLA concerns response, cleanup, notification, and liability for releases of hazardous substances into the environment. Under CERCLA, a private party may bring an action to recover response costs from a responsible party. 42 U.S.C. § 9659(a). EPCRA also authorizes citizen suits. 42 U.S.C. § 11046(a)(1).

The key to understanding this case and the federal and state statutes cited by the Plaintiffs is the collaborative intent of the statutes:

> RCRA contemplates a federal-state partnership to implement its provisions wherein a state may receive authorization from the United States Environmental Protection Agency ("EPA") for its hazardous waste management program.

**Memorandum in Opposition to Motion to Dismiss**                                        **Page 31**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

_Families Concerned About Nerve Gas Incineration v. U.S. Department of the Army_, 380 F.Supp.2d 1233, 1237 (N.D.Ala. 2005). It was in precisely this context that the Alabama legislature enacted AHWMMA. _Id_. By enacting AHWMMA, the Alabama legislature intended "that [ADEM] seek and retain authorization to operate the State Hazardous Waste Management Program" and has a goal "to achieve consistency with the [corresponding] Federal [program]." ALABAMA CODE § 22-30-2. Thus, AHWMMA is really just an extension of the preceding federal statutes.

The Defendant's assumption – that because these statutes were enacted to protect the "public health" they cannot also support an action for negligence _per se_ – also runs contrary to specific rulings that violations of these environmental statutes can and will support an action for negligence _per se_. The Plaintiffs refer the Court to the following cases: _Parker Building Services Company, Inc. v. Lightsey_, 925 So.2d 927, 931 (Ala. 2005)("When the legislature adopts such a statute, anyone who violates it and causes an injury to a person whom the statute was intended to protect is liable for negligence _per se_"); _Parker v. Scrap Metal Processors, Inc_., 386 F.3d 993, 1003 (11th Cir. 2004)("Here, Mrs. Parker's factual showing that the soil on her land was contaminated, that USTs were leaking, and that solid waste migrated onto the Parker property is sufficient to satisfy the injury-in-fact requirement"); _Covington v. Jefferson County_, 358 F.3d 626, 639 (9th Cir. 2004)("To meet the injury in fact requirement for standing, the Covingtons need not show that they will prevail on their challenge asserting that there has been a violation of RCRA; they need only show that the conduct they challenge sufficiently injures them"); _Mulcahey v. Columbia_

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 32**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

*Organic Chemicals Company, Incorporated*, 29 F.3d 148, 150 (4th Cir. 1994)("the environmental statutes at issue create private causes of action").

When the courts speak about "protected classes," what they are really describing is statutes that prescribe a standard of conduct, for it is only those statutes that create a protected class of individuals – i.e., the persons intended to be protected by the standards. At issue in *Thomas Learning Center, Inc. v. McGuirk*, 766 So.2d 161 (Ala.Civ.App. 1998), another case cited by the Defendant, was the violation of the general contractor licensing statute, which does not define a standard of conduct. In these cases, of course, the environmental statutes at issue do just that, and are thus precisely the kind of statutes violation of which constitutes negligence *per se* under established Alabama law:

> On the trial of this case below it was clearly established that the brakes on the Ford Model A Coupe automobile, being driven by Cleve Howard, were defective and that because of these defective brakes the collision between said Ford Coupe and plaintiff's automobile, then being driven by plaintiff, occurred. At the time and place of this collision Cleve Howard was driving said Ford Coupe along and over a public street of the City of Phenix City, Alabama. The public streets of the various cities of this State are a part of the public highway system of this State. Section 1397(88), Ala.Code (Michie's) 1928, provides that "every motor vehicle when operated upon a highway [of this State] shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle." Under the evidence in this case said Ford, Model A Coupe automobile, a motor vehicle, was being driven by Cleve Howard, at the time and place specified in the complaint, in violation of the above Statute. This was negligence per se.

*Harden v. Harden*, 29 Ala. App. 411, 415, 197 So. 94, 97 (Ala.Civ.App. 1940). To accept the Defendant's position, the Court would have to reject the *Harden* decision.

The federal and state statutes upon which the Plaintiffs rely provide an adequate basis for their negligence *per se* claims.

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 33**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

## 2.    Violation

The Defendant also argues that the Plaintiffs' negligence per se claims must fail because the allegations about the violations of the federal and state environmental statutes is not sufficiently detailed, at least in the Defendant's estimation.   But, taken as a whole, the complaints adequately describe the precise nature of the violations – that the Defendant released hazardous substances in excess of permissible limits and intentionally concealed or failed to disclose this fact, thereby earning for its paper mill the distinction of being among the dirtiest facilities in the country.   See the discussion of factual allegations above.

In support of its argument that the Plaintiffs must not only allege the violations, but must actually prove them in their complaints, the Defendant cites *Cook's Pest Control, Inc. v. Rebar*, 2009 Ala. LEXIS 47 (Ala. 2009).   ***Once again, the Defendant confuses the standard for testing evidence with the standard for testing the sufficiency of pleadings***.   In *Cook*, the Alabama Supreme Court reversed the denial of a motion for judgment as a matter of law – an evidentiary motion based on evidence introduced at trial – because the plaintiff did not establish a violation of law sufficient to support negligence per se:

> Cook's states that "the evidence was undisputed that Cook's did not violate any applicable statutes or regulations with respect to its inspections or treatments of the subject property."   (Cook's brief, at 34.)   The Rebars do not respond to this statement; they do not identify any specific provisions of Rule 80-10-9 that were violated; and ***they do not attempt to set forth any evidence that was presented at trial that satisfied the elements of negligence per se***.   Therefore, the trial court erred in denying Cook's motion for a JML on the Rebars' negligence per se claim.

*Id.* at p. 23.   Clearly we are not at the same stage of litigation, and the evidentiary standard is simply not applicable to pleading.

**Memorandum in Opposition to Motion to Dismiss**                                             **Page 34**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

# G.    Abnormally Dangerous Activity

The tort concept of strict liability for an abnormally dangerous activity began with the English case, _Rylands v. Fletcher_, L.R. 3 H.L. 330 (1868).  Although initially rejected in the United States, by the late 1970's most courts had accepted the doctrine in one form or another, and it was incorporated into the RESTATEMENT (SECOND) OF TORTS, which defines the doctrine as follows:

**§ 519 General Principle**

(1)   One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2)   This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

The RESTATEMENT further refines the doctrine by setting out six factors that combine to create liability under the doctrine:

**§ 520 Abnormally Dangerous Activities**

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a)   existence of a high degree of risk of some harm to the person, land or chattels of others;

(b)   likelihood that the harm that results from it will be great;

(c)   inability to eliminate the risk by the exercise of reasonable care;

(d)   extent to which the activity is not a matter of common usage;

(e)   inappropriateness of the activity to the place where it is carried on; and

(f)   extent to which its value to the community is outweighed by its dangerous attributes.

**Memorandum in Opposition to Motion to Dismiss**                                                    **Page 35**
_Benefield, et al., v. International Paper Co._, Civil Action No. 2:09-cv-232-WHA
_Brantley, et al., v. International Paper Co._, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

The Alabama Supreme Court adopted the doctrine in 1981, in *Harper v. Regency Development Company, Inc.*, 399 So.2d 248 (Ala. 1981). In doing so, the Court did not emphasize any one factor over the others. What it did say, however, is that the determination to be made under these factors is a question for the jury:

> A finding, guided by a consideration of factors outlined in the Restatement, that the blaster was "one who carries on an abnormally dangerous activity" is a finding of negligence – the breach of a legal duty – *and*, a further finding that such conduct proximately damaged another, renders the blaster liable therefor. ***Ordinarily, both of these determinations will be issues of fact for the jury***.

399 So.2d at 253, *emphasis added*.

The Defendant in this case seeks to reassign the determination of whether an activity is abnormally dangerous from the jury to the Court, and that without the benefit of evidence. In addition, the Defendant has seized on a single factor – inability to eliminate the risk by the exercise of reasonable care[11] – and has taken that principle to the extreme. But the RESTATEMENT itself acknowledges that there is probably no activity that will fit such a narrow definition, for risks can be eliminated from almost every conceivable activity:

---

11.     In support of its argument that the Plaintiffs' claims for abnormally dangerous activity must be dismissed, the Defendant cites six cases, all of which focus on this single factor: (1) *Clark v. Container Corporation of America*, 936 F.2d 1220 (11th Cir. 1991)(affirming jury verdict and judgment and denial of defense motion for judgment notwithstanding the verdict); (2) *E.S. Robbins Corp. v. Eastman Chemical Co.*, 912 F.Supp. 1476 (N.D.Ala. 1995)(summary judgment granted on strict liability claim asserting that transport of chemical was abnormally dangerous activity); (3) *Fike v. Peace*, 964 So.2d 651 (Ala. 2007)(finding, on question certified from Northern District of Alabama, that merely contracting to haul oversize load does not rise to level of inherently dangerous activity); (4) *In re Burbank Environmental Litigation*, 42 F.Supp.2d 976 (C.D.Cal. 1998)("summary adjudication" applying the six RESTATEMENT factors to determine that strict liability does not apply to the use, storage, and disposal of certain chemical solvents); (5) *Schwartzman, Inc. v. General Electric Company*, 848 F.Supp. 942 (D.N.M. 1993)(application of six factors to determine that strict liability does not apply to contamination of property by petroleum products); and (6) *Turner v. Westhampton Court, L.L.C.*, 903 So.2d 82 (Ala. 2004)(affirming summary judgment on claim that application of certain synthetic stucco was abnormally dangerous).

**Memorandum in Opposition to Motion to Dismiss**                                                  **Page 36**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

> There is probably no activity, unless it is perhaps the use of atomic energy, from which all risks of harm could not be eliminated by the taking of all conceivable precautions, and the exercise of the utmost care, particularly as to the place where it is carried on.   Thus almost any other activity, no matter how dangerous, in the center of the Antarctic continent, might be expected to involve no possible risk to any one except those who engage in it.   *__It is not necessary, for the factor stated in Clause (c) to apply, that the risk be one that no conceivable precautions or care could eliminate__*.   What is referred to here is the unavoidable risk remaining in the activity, even though the actor has taken all reasonable precautions in advance and has exercised all reasonable care in his operation, so that he is not negligent.

RESTATEMENT § 520, Comment on Clause (c), *emphasis added*.

Finally, the Defendant makes the assertion that "Plaintiffs do not allege any of the three types of conduct that the Alabama Supreme Court has accepted as a basis for an abnormally dangerous activity." *Benefield Memorandum*, page 17; *Brantley Memorandum*, page 17.   This assertion is pregnant with the assumption that by identifying certain activities as abnormally dangerous, the Alabama Supreme Court has somehow declared all other activities to be "off limits."   The Defendant does not cite any authority for this proposition, and the Plaintiffs can find none.

### H.    Fraudulent Suppression

### 1.    Affirmative Duty

In the instant case, the Defendant had an affirmative duty of disclosure.   THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, *et seq.* (1986), as amended, as described in 40 CFR Part 370, requires disclosure of emissions to affected communities in order to help them protect health, safety, and the environment from chemical hazards

**Memorandum in Opposition to Motion to Dismiss**                                                    **Page 37**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

Section 313 of the act, 42 U.S.C. § 11023, requires owners and operators of facilities that manufacture, import, process, or otherwise use listed chemicals to report annually their release of those chemicals to any environmental media.   Under section 103(a) of the COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT OF 1980 ("CERCLA"), 42 U.S.C. §§ 9601, 9607, the person in charge of a facility "as soon as he has knowledge of any release" must immediately notify the National Response Center (NRC).   The EPA has found that a knowledge requirement is implicit under EPCRA Section 304 [see 53 Federal Register 13393]. Thus the **_duty_** to notify the SERC and LEPC under EPCRA Section 304 arises as soon as the owner or operator has knowledge that a reportable release has occurred.

The owner or operator of a facility cannot avoid gaining knowledge of a reportable release simply by putting an investigation of suspected release or a timetable convenient for the facility. For Example, EPA's Environmental Appeals Board held that a facility was not justified in waiting ten (10) days to report a release, when necessary calculation could have been completed in seven (7) days.   _In re Mobil Oil Corporation_, EPCRA Appeal No. 94-2 (EAB, September 29, 1994).

Although EPCRA Section 304 does not require reporting before a facility has some degree of certainty that a reportable release has occurred, it is not necessary for the facility to know the exact quantity of the release, as long as there is knowledge that the release exceeded an applicable reportable quantity.   _In re Genicom Corporation_, EPCRA-III-057 (ALJ, July 16, 1992); _In Re: Genicom Corporation_, EPCRA No. 92-2 (EAB December 15, 1992).

**Memorandum in Opposition to Motion to Dismiss**                                                    **Page 38**
**_Benefield, et al., v. International Paper Co._, Civil Action No. 2:09-cv-232-WHA**
**_Brantley, et al., v. International Paper Co._, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

The Defendant's assertion that THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, *et seq*. does not require disclosure to the public is contradicted even by the very name of the act.   Even the U.S. Supreme Court has acknowledged that EPCRA is intended to "inform the public:"

> EPCRA establishes a framework of state, regional and local agencies designed to inform the public about the presence of hazardous and toxic chemicals, and to provide for emergency response in the event of health-threatening release.

*Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 86 (1998).

Perhaps more significant, however, is the fact that the Alabama Supreme Court has specifically declared that a "duty on the part of one to disclose a material fact to another may be based on either a statute or the common law."   *Ex Parte Ford Motor Credit Company*, 717 So.2d 781 (Ala. 1997).   Thus, the kind of fraudulent suppression alleged in these cases – a fraud that violates statutes and affects whole classes of people – is recognized in the law:

> … neither the absence of a direct contractual relationship between Chrysler and the Carters, nor Chrysler's distance from the transaction in which the Carters bought their truck, necessarily relieves Chrysler from a duty to disclose.   Accordingly, we consider whether the Carters are members of a group that Chrysler either (a) would have a special reason to believe would be influenced by its suppression of the fact of the repurchase, or (b) might owe some special *duty created by statute*. *Carter v. Chrysler Corporation*, 743 So.2d 456 (Ala.Civ.App. 1998).

And the Defendant's contention that the statutory duty of disclosure under THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, *et seq*., is to the government, not to the Plaintiffs, is similarly unsupported by Alabama law.   In fact, in *Johnny Spradlin Auto Parts, Inc. v. Cochran*, 568 So. 2d 738 (Ala. 1990), the Alabama Supreme Court specifically held that ***even if a statute does not require disclosure directly to a plaintiff, it may nevertheless form***

**Memorandum in Opposition to Motion to Dismiss**                                                    **Page 39**
***Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA**
***Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA**
**In the United States District Court for the Middle District of Alabama**

*__the basis for a suppression claim if the plaintiff is one of the intended beneficiaries of the__*

*__statute__*.  The defendant in *Spradlin* had replaced a vehicle identification plate in violation of

ALABAMA CODE § 32-8-86, et seq., but argued that it did not owe a duty of disclosure to

subsequent purchasers of the automobile because the statute was designed to aid law enforcement.

The Alabama Supreme Court disagreed with this narrow interpretation of the law.   Specifically,

the Court held that subsequent purchasers of the automobile were entitled to the statutory

protection of ALABAMA CODE § 32-8-86, et seq., requiring accurate identification of their

automobiles:

> Spradlin contends that Cochran cannot use the Act to show special circumstances requiring disclosure for Cochran's benefit, because, it contends, the Act was promulgated only to protect against automobile theft and does not provide protection against the kind of harm Cochran alleges....  Persons who buy cars are entitled to rely on the accuracy of such elements of that tracing system as certificates of title and V.I.N. plates.   Cochran, as a subsequent purchaser of the car, *__is within the class of persons who are the beneficiaries of the duty not to falsify identification numbers or certificates of title and so can claim both that the circumstances imposed a duty on Spradlin to disclose [citations omitted] and that that duty inured to his benefit__*.   568 So. 2d at 744, emphasis added.

Because the stated purpose of THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW

ACT, 42 U.S.C. §§ 11001, *et seq.* (1986), is to warn affected communities about the release of

dangerous chemicals – as the name of the statute implies – the members of those communities,

including Plaintiffs in this case, are the intended beneficiaries of the act.

> EPCRA establishes a framework of state, regional and local agencies designed to inform the public about the presence of hazardous and toxic chemicals, and to provide for emergency response in the event of health-threatening release.

*Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 86 (1998).

**Memorandum in Opposition to Motion to Dismiss**                                         **Page 40**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

Thus, under _Spradlin_, THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, _et seq._ (1986), may serve as the basis for the Plaintiffs' fraudulent suppression claim, and there can be no doubt that the Defendant had an affirmative duty to warn the Plaintiffs of the releases of hazardous substances into the environment.

### 2.    Heightened Standard

The Defendant cites just two cases in the section of its memoranda dealing with the fraudulent suppression claims, and the first of those two cases reveals a great deal, for it actually supports the Plaintiffs.    In _Peters v. Amoco Oil Co._, 57 F.Supp. 1268 (M.D.Ala. 1999), the defendants made many of the same arguments made by IP in these cases, but **_the Magistrate Judge recommended denial of their motion to dismiss_**.    As in the instant cases, _Peters_ involved environmental contamination affecting a sizable number of plaintiffs.    And as the Plaintiffs in this case have alleged, the plaintiffs in _Peters_ asserted that the defendants had concealed the dangers of contamination from their underground storage tanks.    Because the defendants had exclusive control of much of the information, the Court applied a relaxed standard:

> In this case, the court applies the more relaxed _Rule 9(b)_ analysis because Plaintiffs allege that Defendants have exclusive control of certain information required for proper pleading. Specifically, as alleged by Plaintiffs, Defendants are and have been in a superior position with respect to information regarding the alleged leakage, contamination, and fraud.    [_citation omitted_]. Thus, Plaintiffs have appropriately alleged that the necessary information lies within the defendant's control, as required to gain the benefit of the more relaxed 9(b) standard.

57 F.Supp.2d at 1280.    The Plaintiffs have made similar allegations in these cases.

In addition, the defendants in _Peters_ made the same argument now advanced by the Defendant in these cases that an assertion that the health effects of the hazardous substances "have

**Memorandum in Opposition to Motion to Dismiss**                                                    **Page 41**
_**Benefield, et al., v. International Paper Co.**_, Civil Action No. 2:09-cv-232-WHA
_**Brantley, et al., v. International Paper Co.**_, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

long been known" is inconsistent with an assertion that the Defendant concealed these facts.   Of course, the answer is that in both these complaints and the complaint in *Peters* the assertion of knowledge concerns the industrial and scientific communities:

> The fact that information about the UST leakage problem was made public in no way impacts on Plaintiffs' claim concerning whether Defendants attempted to tried to conceal it.  Indeed, the Plaintiffs allege that many of Defendants' actions were taken in response to the publicizing of USTs' leakage problems.  ***Additionally, Plaintiffs do not claim that they were aware of such information at the time it was released to the public; rather, they allege that the information was released within the industry***.  Therefore, the court concludes that these allegations are not inconsistent and this claim is not rendered defective.

57 F.Supp.2d at 1283-1284.

Perhaps most stunning, however, is the similarity in the vague assertions made by the defendants.   Throughout its motions, the Defendant contends that the complaints in these cases lack factual support, yet the precise nature of just what the Defendant wants is never set forth.   In *Peters* the court made note of a similar deficiency:

> Upon review of Defendants' moving papers, the court finds that Defendants have not identified any relevant, essential facts that are not addressed with specificity.

57 F.Supp.2d at 1277.

The closest that the Defendant comes to making such a demand is its contention that the complaints are "particularly devoid of details about what, precisely, the omissions were, when they occurred, and how they misled Plaintiffs."   *Benefield Memorandum*, p. 19; *Brantley Memorandum*, p. 19.   As discussed above, the complaints in these cases identify the hazardous substances released from the Defendant's paper mill, detail the scientific knowledge of their human health hazards, identify the source of the Defendant's affirmative duty to disclose the

**Memorandum in Opposition to Motion to Dismiss**                                    **Page 42**
*Benefield, et al., v. International Paper Co., Civil Action No. 2:09-cv-232-WHA*
*Brantley, et al., v. International Paper Co., Civil Action No. 2:09-cv-230-WHA*
**In the United States District Court for the Middle District of Alabama**

nature and extent of these releases, and specifically state that the Defendant has failed to make the required disclosures over many, many years.   In light of these detailed allegations, it is hard to imagine just what it is that the Defendant believes is missing from the complaints.

### 3.    Fraudulent Suppression

The Defendant argues that the Plaintiffs have failed to allege that its fraudulent suppression induced any of them to act or refrain from acting.   This is simply incorrect, for the complaints clearly allege that:

> Through its actions and by suppressing the foregoing information, International Paper prevented Plaintiffs and other neighboring Property owners and residents from fully evaluating and understanding the situation and delayed Plaintiffs' assertion of their legal rights.

*Benefield Complaint*, ¶ 42; *Brantley Complaint*, ¶ 42.

The Defendant also argues that the Plaintiffs have failed to allege any damages suffered as a result of its fraudulent suppression.   This is also incorrect, for the complaints clearly describe the Plaintiffs' damages.   *Benefield Complaint*, ¶ 106; *Brantley Complaint*, ¶ 106.

## III.    REQUEST FOR ORAL ARGUMENT

The Plaintiffs request oral argument on the motions to dismiss in both cases, including all issues raised and discussed in the parties' briefs.

**Memorandum in Opposition to Motion to Dismiss**                                  **Page 43**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

# IV.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that this Honorable Court will deny the *Motion to Dismiss Plaintiffs' Complaint*.

RESPECTFULLY SUBMITTED on this the 15th day of June, 2009.

*/s/ Robert Leslie Palmer*
Robert Leslie Palmer, State Court ID No. PAL007
Environmental Litigation Group, P.C.
3529 Seventh Avenue South
Birmingham, Alabama 35222
Telephone: 1-205-328-9200
Facsimile: 1-205-328-9206

ATTORNEYS FOR THE PLAINTIFF

**Memorandum in Opposition to Motion to Dismiss**                                   **Page 44**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**

# CERTIFICATE OF SERVICE

      I hereby certify that on June 15, 2009, I caused the foregoing ***Memorandum in Opposition to Motion to Dismiss*** to be electronically filed with the Clerk of the Court using the ECF system and notification of such filing to send to all counsel of record.

          */s/ Robert Leslie Palmer*                              
          Of Counsel

**Memorandum in Opposition to Motion to Dismiss**        **Page 45**
*Benefield, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-232-WHA
*Brantley, et al., v. International Paper Co.*, Civil Action No. 2:09-cv-230-WHA
**In the United States District Court for the Middle District of Alabama**