UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION
(at Montgomery)

| | |
|---|---|
| THOMAS L. BRANTLEY, et al., | ) |
| Plaintiffs, | ) Civil Action No. 2: 09-230-DCR |
| V. | ) |
| INTERNATIONAL PAPER COMPANY, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the plaintiffs' Motion to Alter or Amend [Record No. 290] the Memorandum Opinion and Order of May 24, 2017 [Record No. 288]. Specifically, the plaintiffs ask the Court to vacate its rulings which granted summary judgment in favor of the defendant on the plaintiffs' claims of negligence, public nuisance, and trespass. The plaintiffs also ask the Court to vacate its rulings regarding the admissibility of expert testimony regarding medical causation. For the reasons that follow, the motion will be denied.

**I.**

Under Rule 59(e) of the Federal Rules of Civil Procedure, a party may ask a court to alter or amend its prior rulings in a pending case based on newly discovered evidence or manifest errors of law. *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999). The remedy provided under Rule 59(e) is extremely narrow and is not intended to be used to re-litigate matters or present arguments or evidence that could have been raised previously. *Michael*

*Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005). In fact, to prevail on a motion to reconsider, the aggrieved party must "demonstrate a justification for relief so compelling that the court was required to grant the motion." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012).

**II.**

**A.     Plaintiffs' Negligence Claims**

The plaintiffs contend that the Court manifestly erred by granting summary judgment in favor of IP regarding their negligence claims. However, expert testimony is required to establish the appropriate standard of care concerning matters involving specialized knowledge that is outside the common experience of a layperson. *See Glenn Constr. Co., LLC v. Bell Aerospace Servs., Inc.*, 785 F.Supp.2d 1258, 1282-83 (M.D. Ala. 2011). *See also In re Amtrak Sunset Ltd. Train Crash*, 188 F.Supp.2d 1341, 1349 (S.D. Ala. 1999). Expert witnesses may rely upon applicable state or federal regulations or industry customs as bases for opining on the standard of care. *See Trinidad v. Moore*, No. 2: 15-cv-323, 2016 WL 5239866, *5-*6 (M.D. Ala. Sept. 20, 2016).

The plaintiffs contend that a jury could "find negligence" based on the sheer volume of fugitive emissions IP has released. This claim is based, in large part, on the assertion that the mill utilizes "short stacks." However, after reviewing all of the evidence, there is no genuine issue of material fact that the defendant breached any duty with respect to stack height. The plaintiffs' proposed standard-of-care expert (Cheremisinoff) reported that "tall stacks" promote better dispersion of chemical emissions, but conceded that they are typical at *power plants*. [Record No. 200-8, p. 20] Further, he did not examine customary stack

heights within the paper industry. [Record No. 306-2, p. 216]. *See Kerns v. Sealy*, 496 F.Supp.2d 1306, 1316 (S.D. Ala. 2007) (applying industry standards to establish standard of care).

Cheremisinoff expressly declined to comment on whether IP's stack heights were adequate for the mill. [Record No. 306-2, pp. 214-15] He also abstained from offering an opinion regarding whether any particular emission control practice complied with an industry standard. [Record No. 200-22, p. 15] The plaintiffs contend that Cheremisinoff still could offer an opinion that IP was negligent with respect to operations *in general*, but such an opinion must be based on evidence that IP breached an applicable standard of care in some manner.

The plaintiffs focus significant attention on Cheremisinoff's statements regarding fugitive emissions. These are defined as emissions "which could not reasonably pass through a stack, chimney, vent, or other functionally equivalent opening." 40 C.F.R. § 52.21(b)(20). However, Cheremisinoff relied on NEI data which characterized emissions passing through stacks less than 10 feet in height as fugitive emissions. Consequently, the plaintiffs contend that half of the mill's emissions from 1988 through 2002 were fugitive. [Record No. 291, p. 4] The plaintiffs assert that these emissions did not disperse as well as emissions from tall stacks because they were released closer to the ground. The plaintiffs also contend that an unknown volume of fugitive emissions came from "leak[s] from piping components," which were not scrubbed or reduced by pollution-reducing devices contained in stacks. The plaintiffs argue that the jury could infer negligence based on this "high volume" of fugitive emissions released from the mill.

The plaintiffs failed to present any evidence that the mill did not comply with federal or state requirements regarding stack heights or emission standards. Although compliance with statutory standards does not preclude negligence claims, *see Morrison v. Drummond, Inc.*, No. 2: 14-CV-406, 2015 WL 1345721, at *3 (N.D. Ala. March 23, 2015), compliance is evidence of due care. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1174 (11th Cir. 2014) (citing Restatement (Second) Torts § 288C (1979)). Further, Cheremisinoff declined to offer an opinion that "any of the stacks at the IP mill should be taller than they are." [Record No. 306-2, pp. 214-15] This seriously undermines the plaintiffs' argument that half of IP's emissions were characterized as fugitive due to insufficient stack height. Additionally, the plaintiffs did not attempt to quantify the alleged fugitive emissions based on leaks and Cheremisinoff concedes that he did not visit the facility or evaluate any particular emissions source. *Id.* at pp. 14, 50.

Although the plaintiffs fault the paper mill for using "short stacks" and having too many fugitive emissions, they have not provided evidence that would give jurors a reasonable basis to determine that IP's actions fell below an accepted standard of care. Put simply, the plaintiffs' failure to provide expert testimony regarding the standards recognized in the pulp and paper industry would force a jury to engage in speculation regarding the appropriate standards of care. Because such speculation is prohibited, the plaintiffs cannot prove their claims of negligence. *See Griggs v. Washington Metro. Area Transit Auth.*, No. 99-1552, 2002 WL 31174533, at *5 (D.D.C. Sept. 30, 2002) (citing *Nat'l Tel. Coop. Assoc. v. Exxon Mobil Corp.*, 244 F.3d 153, 154-55 (D.C. Cir. 2001)).

The plaintiffs also make a passing argument that IP also could be negligent based on its "failure to develop programs to reduce acid aerosols . . . failure to investigate odor complaints and develop programs to reduce the number of complaints, and [the] failure to determine whether its releases were harming the community and to take steps to cure this harm." [Record No. 291, p. 8] To the extent the plaintiffs did not develop an argument to support this contention, it is waived. *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1212 (7th Cir. 1993) ("Failure to press a point (even if it is mentioned) and to support it with proper argument and authority forfeits it."). *See also Taul ex rel. United States v. Nagel Enters., Inc.*, No. 2: 14-cv-061, 2016 WL 304581, at *10 (N.D. Ala. Jan. 25, 2016). Regardless, it appears that these issues suffer from the same infirmities as those previously discussed because Cheremisinoff did not provide a standard of care.

The plaintiffs' Rule 59 argument regarding their public nuisance claim is premised on the proposition that the Court must vacate its decision regarding negligence. [Record No. 291, pp. 9-10] Accordingly, the ruling regarding the public nuisance claims will not be disturbed.

### B. General Medical Causation

The plaintiffs also contend that the Court erred in concluding that there was no genuine issue of material fact regarding general medical causation. [Record No. 291, p. 10] For the first time, the plaintiffs argue that "there is no evidence in the record as to whether the medical community in May of 2017 recognizes that the chemicals of concern" exacerbate respiratory illnesses. *Id.* It is well-established that a Rule 59(e) motion may not be used to raise arguments which could have been raised prior to the issuance of ruling

being challenged. *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992). If the plaintiffs believed supplementation of the record was necessary, they had ample opportunity to seek leave to do so prior to the Court's rulings. As the plaintiffs point out, the parties' dispositive/*Daubert* motions remained pending for nearly six years. The Court held a status conference in March 2017, but the plaintiffs did not mention expanding the record to address the current state of medical knowledge. Thereafter, the plaintiffs filed a six-page status report but still failed to raise this issue. [Record No. 284] The plaintiffs' extraordinary request will be denied.

In the alternative, the plaintiffs request further explanation regarding the Court's classification of the alleged toxic substances at issue. As previously explained, the Eleventh Circuit recognizes two categories of toxic tort cases. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005). The first consists of those cases "in which the medical community generally recognizes the toxicity of the [substance] at issue" to "caus[e] the injury the plaintiff alleges." *Id. See also Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1196 (11th Cir. 2010). For judicial economy, expert opinions are not required to establish general causation for diagnoses that doctors "routinely and widely recognize as true, like cigarette smoking causes lung cancer and heart disease, too much alcohol causes cirrhosis of the liver, and . . . the ingestion of sufficient amounts of arsenic causes death." *McClain*, 401 F.3d at 1239.

The second category includes cases where the medical community generally does not recognize the substance in question as toxic and as having caused the injury at issue. *Id.* These cases require a more involved *Daubert* analysis, with expert testimony regarding

both general and specific causation. *Id.* The plaintiffs contend that the medical community as of 2011 "recognized that the chemicals of concern . . . can exacerbate the diseases in question." [Record No. 291] In support, they cite generally "Plaintiffs' Exhibit 4," a 124-page document which includes portions of Rosenfeld's expert report and deposition, and various scientific articles regarding air pollution. [Record No. 293-1]

It was the plaintiffs' burden to present evidence of causation sufficient to survive a motion for summary judgment. *See Gringauz v. Sherwin-Williams Co.*, 09-cv-60197, 2010 WL 11530661, at *2-3 (S.D. Fla. July 23, 2010). The plaintiffs have failed to identify specific evidence demonstrating general acceptance within the medical community that particulate matter, nitrogen oxides, sulfur dioxide, carbon monoxide, volatile organic compounds, ozone, acetaldehyde, formaldehyde, hydrochloric acid, sulfuric acid, or any combination thereof, causes or exacerbates sarcoidosis, rhinitis, asthma, sinusitis, "spot on lungs," chronic bronchitis, COPD, or emphysema. [*See* Record No. 198-1, Test Plaintiffs' Personal Injury Claims.] Although Rosenfeld cited a host of scientific sources indicating that some of these chemicals are respiratory irritants, the sources are not tantamount to an opinion regarding general causation. For instance, the cited material (issued by the EPA and other public agencies) indicates that particulate matter causes a litany of illnesses including asthma, bronchitis, heart attacks, lung cancer, and, in some cases, premature death. [Record No. 200-13, p. 38]

As a general rule, expert testimony is required to establish general causation. The category of toxic tort cases in which such evidence is not required is limited to a narrow range of substances and illnesses. *See McClain*, 410 F.3d at 1239. The plaintiffs have

failed to identify authority indicating that any court has deemed the substances and illnesses at issue as "category one." In the absence of such authority, and for the reasons previously stated, the Court assumes they fall under the second category. *See Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, No. 12-cv-332, 2015 WL 627960, *5-6 (N.D. Ala. Feb. 12, 2015).

The plaintiffs argue that, even if this case falls into the second category, Rosenfeld offered admissible evidence of general medical causation. [Record No. 291, p. 16] However, this is in direct contrast to the plaintiffs' response to IP's motion to exclude Rosenfeld's opinion. There, the plaintiffs stated that, while Rosenfeld was "perfectly capable" of offering opinions regarding the "harmful nature" of the mill's emissions, he "[did] not purport to offer any opinions regarding medical causation in his reports, opinions, or testimony." [Record No. 232, p. 28] Rosenfeld's deposition testimony backs up this assertion. He declined to offer an opinion regarding whether chronic, low-dose exposure to the compounds at issue caused a specific disease. Instead, Rosenfeld opted to "punt on that and let Dr. Goldstein and Dr. Gary opine on that." [Record No. 200-25, pp. 21-22]

Allowing Rosenfeld to broaden the scope of his testimony in this way would unfairly prejudice the defendant. While he touched upon medical causation within his report, he did not reach specific conclusions regarding general causation. After he expressly disclaimed offering any medical causation opinions in the case, the defendant had no reason to explore the topic further with this witness. Until now, the plaintiffs consistently have rejected the notion that Rosenfeld would testify regarding medical causation. And they cannot expand the scope of his testimony now. *See* Fed. R. Civ. P.

26(a)(2)(B) and 26(e)(1) (requiring disclosures in advance of trial of the bases and reasons for an expert's opinions).

## C. Specific Medical Causation

The Court determined that, because the plaintiffs had no admissible evidence regarding general causation, there was no need to consider their ability to establish specific causation. [Record No. 288, p. 44] It was noted, however, that Goldstein's opinion regarding specific causation was inadmissible under *Daubert* and *McClain*, 401 F.3d at 1242-43. Goldstein examined many of the plaintiffs and then issued "letter reports," which included a brief recitation of the plaintiff's history and typically concluded by stating that the mill's emissions would exacerbate the plaintiff's symptoms. [Record No. 200-11, 12] He did not rely on reports from any of the other experts or attempt to quantify the dose-response relationship in any way. [Record No. 200-24, p. 10-11, 24] Instead, he based his conclusions on the plaintiffs' subjective complaints and reported that the plaintiffs experienced exacerbations of respiratory problems when they smelled the mill's emissions. [Record Nos. 200-24, p. 61; 200-11, 12] Goldstein conceded that he was unaware of any scientific literature that relates odor and emission levels. [Record No. 200-24, p. 23]

Goldstein's method is undermined further by the fact that he was unaware of which compounds or chemicals allegedly were emitted from the mill and, therefore, were responsible for exacerbating the plaintiffs' symptoms. [Record No. 200-24, pp. 13, 33] When asked which substances he believed were emitted, Goldstein stated that he would "be concerned" about sulfur compounds, nitrogen compounds, carbon compounds, and particulate matter. *Id.* While Goldstein had some familiarity with substances that might

be emitted from a paper mill, he did not know with certainty which substances were at issue in this case. Further, he declined to comment on whether there is a safe level of exposure for any of the substances he described. Instead, he stated he would "let the toxicologists and industrial health people do that." *Id.* at p. 17.

Specific causation examines whether the plaintiff has demonstrated that "the substance actually caused injury in her particular case." *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1248 n.1 (11th Cir. 2010). When questioned about the basis of his causation opinions, Goldstein identified nothing other than the plaintiffs' subjective complaints of "smell[ing] the odor" before the onset of symptoms. [Record No. 200-24, p. 12] The Eleventh Circuit has found that specific causation testimony based on temporal proximity alone is inherently unreliable. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1342 (11th Cir. 2010) (citing *McClain*, 401 F.3d at 1254). Although Goldstein noted the existence of co-morbidities, there is no indication that he engaged in a meaningful differential diagnosis. [*See* Record No. 200-11, pp. 4-119; 200-12, pp. 2-3, 17-18, 34-35, 52-53, 66-69] Based on the foregoing, Goldstein's opinions regarding specific causation are unreliable and properly excluded. *See Jones v. Novartis Pharms. Corp.*, No. 2: 13-cv-624, 2017 WL 372246, at *4-5 (N.D. Ala. Jan. 26, 2017) (citing *McClain*, 401 F.3d at 1242-43).

### D. Property Damage Claims

Finally, the plaintiffs argue that the Court should vacate its decision granting summary judgment in favor of the defendant with respect to Test Plaintiffs' property damage claims. [*See* Record No. 198-1.] However, there is insufficient evidence raise a genuine issue of material fact that emissions from the mill damaged caused the Test

Plaintiffs' claimed property damages. Upon review of the plaintiffs' motion and their deposition testimony, the resounding theme is "it must have been the mill." Unfortunately for the Test Plaintiffs, assumptions that are not accompanied by sufficient evidence of causation do not warrant submitting the case to a jury.

Contrary to the plaintiffs' argument, the Court did not weigh the Test Plaintiffs' credibility to grant summary judgment in favor of the defendant. [Record No. 291, pp. 24-25] Instead, the Court accepted their deposition testimony at face value and determined that there was not a sufficient evidentiary basis to conclude that the emissions caused their property damage. The plaintiffs are entitled to all *reasonable* inferences. *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1141 (11th Cir. 2014). But that are not entitled to unreasonable assumptions. At best, the plaintiffs expressed unsubstantiated beliefs that the mill's emissions damaged their property. As explained in the Court's prior Memorandum Opinion and Order, claims do not withstand a motion for summary judgment simply because the defendant's action "might" have caused the damages alleged. "Evidence that affords nothing more than mere speculation, conjecture, or guess is completely insufficient to warrant the submission of a case to the jury." *Peoples v. Town of Ragland*, 583 So.2d 221, 335 (Ala. 1991). *See also Oliver v. Columbia Sussex Corp.*, 391 F. App'x 840, 841-42 (11th Cir. 2010); *Bagley v. Mazda Motor Corp.*, 864 So.2d 301, 313 (Ala. 2003).

The plaintiffs' experts do not save the Test Plaintiffs' property damage claims. While the experts provided opinions regarding some of the *categories* of property damage alleged, the experts did not meaningfully address whether the emissions damaged the actual

items at issue. Cheremisinoff opined that the mill has "damaged its neighbor's properties." However, he did not examine any of the Test Plaintiffs' items and, therefore, did not address other potential causes for the property damage including the items' age, service history, and normal wear and tear under the meteorological conditions in Prattville, Alabama. His conclusions regarding corrosion were based, in large part, on his study which was excluded.

The record contains considerable speculation regarding the cause of the Test Plaintiffs' property damage, but no reliable proof of the cause. *See Fenner v. General Motors Corp.*, 657 F.2d 647, 650-51 (5th Cir. 1981) (Plaintiffs may establish causation by "drawing an inference upon an inference," but the inferences must not require the jury to disregard evidence of other possible causes. . . . "Plaintiffs are not entitled to a verdict based on speculation and conjecture."). Accordingly, summary judgment in favor of the defendant was warranted.

### III.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the plaintiffs' Motion to Alter or Amend [Record No. 290] is **DENIED**.

This 3rd day of August, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge